## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

CHARLES MICHAEL BRELAND,     :

     Petitioner,     :

vs.     : CIVIL ACTION NO. 09-0795-CG-C

UNITED STATES OF AMERICA,     : CRIMINAL ACTION NO. 09-0008-CG

     Respondent.

## REPORT AND RECOMMENDATION

Petitioner, Charles Michael Breland, Sr., a federal prison inmate proceeding *pro se*, has filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 42). This action has been referred to the undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Following consideration of all relevant pleadings in this case, and the testimony of petitioner and his defense attorneys, Donald Briskman and Joshua Briskman, at the June 17, 2010 evidentiary hearing, it is recommended that Breland's § 2255 motion be denied and that it be found he is not entitled to a certificate of appealability.

## FINDINGS OF FACT

1.     On January 29, 2009, Breland was charged, by indictment, with one count of knowingly possessing and attempting to possess, from on or about September 12, 2005 to on or about October 9, 2008, images of child pornography that were mailed, shipped and

transported in interstate commerce by any means, including by computer, in violation of 18

U.S.C. §§ 2252A(a)(5)(B) and 2256(8)(A), and one count of knowingly receiving and

distributing, from on or about September 12, 2005 to on or about October 9, 2008, images

of child pornography as defined in 18 U.S.C. § 2256(8)(A) that had been shipped and

transported in interstate and foreign commerce, specifically by computer, in violation of 18

U.S.C. § 2252A(a)(2) and (b)(1). (Doc. 4)[1]

2.     On March 19, 2009, Breland and one of his attorneys, Joshua Briskman,

Esquire, filed notice of his intent to change his plea to guilty to Count 2 of the indictment.

(Doc. 26)[2]

> This change of plea is based on plea negotiations with the U.S.
> Attorney. As a result of these plea negotiations and in exchange for my plea
> of guilty, the Government has agreed to recommend to the Court the
> following: low end of the guideline range or if the low end of the guideline
> range is less than the statutory minimum, the Government has agreed to
> recommend the statutory minimum.

(*Id.*)[3]

---

[1]     In addition, a forfeiture count, in accordance with 18 U.S.C. § 2253, was asserted against Breland. (Doc. 4, Count Three)

[2]     Breland actually signed this document. (*Id.*)

[3]     The statutory minimum mandatory sentence in this case was five years, which is the term of imprisonment to which Breland was sentenced. The evidentiary hearing testimony of Breland's attorneys establishes that through their negotiations with the U.S. Attorney's Office they were able to garner a stipulation that the defendant possessed only 600 images of child pornography, as opposed to the actual number of images produced during discovery, which benefitted their client because it got the parties to the point that they could agree on the statutory minimum mandatory of five (5) years. Of course, had petitioner chosen to go to trial he was facing a statutory maximum term of imprisonment of twenty (20) years.

3. That same date, March 19, 2009, the parties filed a plea agreement and factual resume with the Court. (Doc. 28) The plea agreement reads, in relevant part, as follows:

## PLEA AGREEMENT

The defendant, CHARLES MICHAEL BRELAND, represented by his counsel, and the United States of America have reached a Plea Agreement in this case, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the terms and conditions of which are as follows:

## RIGHTS OF THE DEFENDANT

1. The defendant understands his rights as follows:

    a. To be represented by an attorney;

    b. To plead not guilty;

    c. To have a trial by an impartial jury;

    d. To confront and cross-examine witnesses and to call witnesses and produce other evidence in his[] defense;

    e. To not be compelled to incriminate himself.

## WAIVER OF RIGHTS AND PLEA OF GUILTY

2. The defendant waives rights b through e, listed above, and pleads guilty to Count 2 of the Indictment, charging a violation of 18 United States Code, Section 2252A(a)(2) and (b)(1), Receipt and Distribution of Child Pornography.

.    .    .

4. The defendant expects the Court to rely upon his statements here and his response to any questions that he may be asked during the guilty plea hearing.

5. The defendant is not under the influence of alcohol, drugs, or narcotics. He is certain that he is in full possession of his senses and mentally

competent to understand this Plea Agreement and the guilty plea hearing which will follow.

6.     The defendant has had the benefit of legal counsel in negotiating this Plea Agreement. He has discussed the facts of the case with his attorney, and his attorney has explained to the defendant the essential legal elements of the criminal charge(s) which has/have been brought against him. The defendant's attorney has also explained to the defendant his understanding of the United States' evidence.

7.     The defendant understands that the United States has the burden of proving each of the legal elements of the criminal charge(s) beyond a reasonable doubt. The defendant and his counsel have discussed possible defenses to the charge(s). The defendant believes that his attorney has represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice of his attorney.

8.     A separate document, entitled Factual Resume, will be submitted to the Court as evidence at the guilty plea hearing. The Factual Resume is incorporated by reference into this Plea Agreement. The defendant and the United States agree that the Factual Resume is true and correct.

9.     This plea of guilty is freely and voluntarily made and is not the result of force, threats, promises, or representations apart from those set forth in this Plea Agreement. There have been no promises from anyone as to the particular sentence that the Court may impose. The defendant avers that he is pleading guilty because he knows that he is guilty.

## PENALTY

10.     The maximum penalty the Court could impose as to Count 2 of the Indictment is:

1.     Up to 20 years imprisonment with a 5 year minimum mandatory sentence;

2.     A fine not to exceed $250,000;

3.     A term of supervised release for life, which would follow any term of imprisonment. If the defendant violates the conditions of supervised release, he could be imprisoned for the entire term of supervised

release;

4.    A mandatory special assessment of $100.00; and

5.    Such restitution as may be ordered by the Court.

## DETENTION

11.    The Defendant stipulates and agrees that he is pleading guilty to a crime of violence, as that term is defined at 18 U.S.C. § 3156(a)(4)(C), and that there are no exceptional reasons why his detention would not be appropriate. The Defendant understands that 18 U.S.C. § 3143(a)(2) ("Release or detention of a defendant pending sentence or appeal"), requires that the Court order that the Defendant be detained while awaiting imposition or execution of sentence.

## SENTENCING

12.    The Court will impose the sentence in this case. The United States Sentencing Guidelines apply in an advisory manner to this case. The defendant has reviewed the application of the Guidelines with his attorney and understands that no one can predict with certainty what the sentencing range will be in this case until after a pre-sentence investigation has been completed and the Court has ruled on the results of that investigation. The defendant understands that at sentencing, the Court may not necessarily sentence the defendant in accordance with the Guidelines. The defendant understands that he will not be allowed to withdraw his guilty plea if the applicable guideline range is higher than expected, if the Court departs from the applicable advisory guideline range, or if the Court imposes a sentence notwithstanding the Guidelines.

13.    The United States may provide all relevant sentencing information to the Probation Office for purposes of the pre-sentence investigation. Relevant sentencing information includes, but is not limited to, all facts and circumstances of this case and information concerning the defendant's conduct and background.

14.    The defendant understands that this Plea Agreement does not create any right to be sentenced in accordance with the Sentencing Guidelines, or below or within any particular guideline range, and fully understands that determination of the sentencing range or guideline level, or the actual sentence

imposed, is solely the discretion of the Court.

15.     Both the defendant and the United States are free to allocute fully at the time of sentencing.

.     .     .

17.     Defendant stipulates and agrees that based on the Sex Offender Registration and Notification Act ("the Act"), Title 42, United States Code, Section 16911 et seq., he is a sex offender as that term is defined in the Act. Defendant further agrees that pursuant to the Act, he is required to register as a sex-offender, and keep the registration current, in each jurisdiction where Defendant resides, is an employee, or is a student. Defendant further agrees that for initial registration purposes only, Defendant is required to also register in the jurisdiction in which Defendant is convicted if such jurisdiction is different from the jurisdiction of residence.

## FORFEITURE OF PROPERTY

18.     Defendant individually and by and through his attorney of record, hereby agree[s] and stipulate[s] that the following property is knowingly and voluntarily forfeited to the United States of America:

All property, real or personal, used or intended to be used to commit or promote commission of such offenses, included, but not limited to the following: Computer Equipment.

## UNITED STATES' OBLIGATIONS

19.     The United States will not bring any additional charges against the Defendant related to the facts underlying the Indictment and will move to dismiss Count One. This agreement is limited to the United States Attorney's Office for the Southern District of Alabama and does not bind any other federal, state, or local prosecuting authorities.

20.     The United States will recommend to the Court that the Defendant be sentenced to the low end of the applicable advisory sentencing guideline range as determined by the Court, or if the low end of the Guideline range is less than the statutory minimum, to recommend to the Court the statutory minimum sentence.

## LIMITED WAIVER OF RIGHT TO APPEAL SENTENCE

21.     The defendant acknowledges that he is aware that 18 U.S.C. § 3742 affords a Defendant the right to appeal the sentence imposed. In exchange for the recommendations made by the United States in this Plea Agreement, the Defendant knowingly and voluntarily waives the right to appeal any sentence imposed in this case.

22.     With the limited exceptions noted below, the Defendant also waives his right to challenge any sentence so imposed, or the manner in which it was determined, in any collateral attack, including but not limited to, a motion brought under 28 U.S.C. § 2255.

23.     The Defendant reserves the right to contest in an appeal or post-conviction proceeding any of the following:

a.     Any punishment imposed in excess of the statutory maximum;

b.     Any punishment that constitutes an upward departure from the guideline range; or

c.     A claim of ineffective assistance of counsel.

24.     In addition, the Defendant reserves the right to petition the Court for resentencing pursuant to 18 U.S.C. § 3582 in the event of a future retroactive amendment to the Sentencing Guidelines which would affect the Defendant's sentence.

(*Id.* at 1, 2-4, & 5-6) Appearing before Breland's signature line on page 7of the agreement

is this paragraph: "I have consulted with my counsel and fully understand all my rights with

respect to the offenses(s) charged in the Indictment pending against me. **I have read this**

**Plea Agreement and carefully reviewed every part of it with my attorney**. I understand

**this agreement, and I voluntarily agree to it.** I hereby stipulate that the Factual Resume,[4]

---

[4]     The Factual Resume, which Breland also signed, reads as follows:

The defendant, **CHARLES MICHAEL BRELAND**, admits the allegations of Count 2 of the Indictment.

### ELEMENTS OF THE OFFENSE

**BRELAND** understands that in order to prove a violation of Title 18, United States Code, Section 2252A(a)(2) and (b)(1), as charged in Count 2 of the Indictment, the United States must prove:

1.     That the Defendant, knowingly received or distributed any book, magazine, periodical, film, videotape, computer disc or any other material that contains an image of child pornography; and

2.     That such image was mailed, or was shipped or transported in interstate or foreign commerce by any means, including by computer or was produced using materials that were mailed, or were shipped or transported in interstate or foreign commerce by any means, including by computer.

### OFFENSE CONDUCT

Defendant, **CHARLES MICHAEL BRELAND**, admits in open court and under oath that the following statement is true and correct and constitutes evidence in this case.

In September, 2008, Immigration and Customs Enforcement (ICE) agents in Mobile received an investigative lead from the ICE Cyber Crimes Center (C3) regarding **BRELAND**. The investigative lead indicated that **BRELAND** had purchased and/or attempted to purchase commercial child pornography videos from an Italian source on two occasions. The information was gleaned from information Italian authorities had discovered in the investigation and prosecution of the commercial child pornography website. The dates of these purchases and/or attempted purchases by **BRELAND** were September 12, 2005, and June 06, 2006. The respective videos requested for purchase [were] named N17 and Alina #3.

On October 09, 2008, agents conducted a consensual interview of **BRELAND** at his home at 10151 HWY 188, Grand Bay, AL 36541. The interview began at approximately 1730 hours when SSA Anderson introduced

8

himself to **BRELAND** in the carport area of **BRELAND's** residence. ICE Senior Special Agent Christopher Anderson displayed his government issued badge and credentials to **BRELAND**, and SSA Anderson introduced Det. Faulk and PI Dirmeyer. SSA Anderson asked **BRELAND** if [he] would be willing to answer SSA Anderson's questions. **BRELAND** responded in the affirmative. SSA Anderson asked **BRELAND** if he had internet service at his residence and if so, who was the ISP. **BRELAND** responded that he did in fact have internet service and Mediacom is the provider. SSA Anderson asked **BRELAND** if there was a computer located at the residence, to which **BRELAND** stated that there were numerous computers located in his residence. SSA Anderson asked **BRELAND** what his e-mail address was, to which **BRELAND** responded [mikebre@mchsi.com.](mailto:mikebre@mchsi.com) SSA Anderson displayed to **BRELAND** a record of **BRELAND's** electronic communications with the Italian child pornography e-mail address in which **BRELAND** ordered and/or attempted to order videos. **BRELAND** admitted that the record of the electronic communication was in fact him ordering a video titled "N17". **BRELAND** stated that the second communication date June 06, 2006, was in fact him attempting to purchase a video titled "Alina #3", but further stated that he never actually completed the second purchase. **BRELAND** described "N17" as a direct download that was approximately 55 minutes long and depicted a white female approximately 14 years of age posing. **BRELAND** also stated that during the video, the female was clothed, that there was no speech during the video, that there was music playing during the video, that the female was posing during the video, and that the female was cute but the video was boring. **BRELAND** stated the video was advertised as a modeling site. **BRELAND** stated that he paid approximately $25.00 for the site and the transaction was made with a credit card.

SSA Anderson then asked **BRELAND** if [he] would consent for the law enforcement officers to view the contents of his computer. **BRELAND** granted the agents consent to search his residence and computers for images of child pornography. Furthermore, **BRELAND** signed a Consent to Search Form authorizing the search of his residence and computers.

United States Postal Inspector David Dirmeyer previewed a number of images located on **BRELAND's** computers and discovered images depicting child pornography. PI Dirmeyer then had SSA Anderson view some of these images. SSA Anderson then requested **BRELAND** move from the carport area to the area where his computers were located inside the residence. Once in view of the computer monitor and upon seeing the image displayed on the screen, **BRELAND** made the following statement, "Oh, crap." **BRELAND** later said, "I thought I deleted all that stuff." **BRELAND** admitted the picture was sexually explicit. **BRELAND** also stated he did not know he still had the "LS stuff."

incorporated herein, is true and accurate in every respect, and that had the matter proceeded

to trial, the United States could have proved the same beyond a reasonable doubt." (*Id.*)

    4.      On April 28, 2009, Breland entered a counseled guilty plea to Count 2 of the

Indictment. (Doc. 45, Guilty Plea Transcript)

> THE COURT:     . . . Mr. Breland, I understand you're pleading
> guilty to the charge of count two, violating Title 18, United States Code,
> Section 2252A(a)(2) and (b)(1); is that correct?
>
> THE DEFENDANT:     Yes, Your Honor.
>
> THE COURT:     . . . Would you place the defendant under oath,
> please[.]
>
>          .     .     .
>
> (The defendant was sworn.)
>
>          .     .     .

---

**BRELAND** stated he remembers the photos displayed on the computer, and that he had downloaded them from newsgroups. **BRELAND** stated, "I didn't think I still had any of that shit." **BRELAND** stated, "I wish I had never downloaded it, obviously." **BRELAND** admitted to downloading and looking at the child pornographic images.

    A search warrant was obtained to search **BRELAND's** computer, and a forensic analysis was performed. The analysis revealed several hundred images of child pornography. The images depicted pubescent and prepubescent minors in modeling-type poses, in various states of dress and undress. The N17 video that **BRELAND** purchased and downloaded from Italy depicted a 14-year old female posing in a shortly-cropped shirt and g-string, focusing during various parts of the nearly hour-long video on her pubic region and chest.

(Doc. 28, FACTUAL RESUME, at 1-4)

THE COURT:        . . . Mr. Breland, do you understand that you are now under oath and that if you answer any of my questions falsely, those answers may later be used against you in a separate prosecution for perjury or for making a false statement?

THE DEFENDANT:        Yes, Your Honor.

THE COURT:        What is your full name?

THE DEFENDANT:        Charles Michael Breland.

THE COURT:        And how old are you?

THE DEFENDANT:        61, Your Honor.

THE COURT:        And how far did you go in school?

THE DEFENDANT:        About eight years . . . of college. I have a bachelor's degree.

THE COURT:        Have you been treated recently for any mental illness or addiction to narcotic drugs?

THE DEFENDANT:        Yes, Your Honor. I'm currently under therapy with a psychologist.

THE COURT:        . . . And is that for depression?

THE DEFENDANT:        Depression and anxiety, yes, Your Honor.

THE COURT:        . . . Are you currently under the influence of any drug, medication or alcoholic beverage?

THE DEFENDANT:        No, Your Honor.

THE COURT:        Have you received a copy of the indictment?

THE DEFENDANT:        Yes, Your Honor.

THE COURT:        And have you fully discussed those charges and the case in general with Mr. Briskman?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand the charges pending against you?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are each of you fully satisfied with the counsel, representation, and advice given to you in this case by Mr. Briskman?

THE DEFENDANT: I believe he's done all he could, Your Honor.

THE COURT: Now, I've been provided with a plea agreement and an attached factual resume, and I want you to take a look at those documents and tell me on the record whether that is your plea agreement and factual resume and whether you signed those documents.

THE DEFENDANT: Yes, Your Honor. This is it.

THE COURT: Did you have the opportunity to read and discuss the plea agreement with your attorney before you signed it?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you have any agreements with the United States Government concerning your case that are not written down in your plea agreement?

THE DEFENDANT: No, Your Honor.

THE COURT: Do you understand the terms of your plea agreement?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Has anyone made any other or different promises or assurances to you of any kind in an effort to induce you to plead guilty?

THE DEFENDANT: No, Your Honor.

THE COURT: Do you understand that certain of the terms of the plea agreement are merely recommendations to the Court and that I can reject those recommendations without permitting you to withdraw your plea of guilty and impose a sentence that's more severe than you might anticipate?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Has anyone attempted in any way to force you to plead guilty?

THE DEFENDANT: No, Your Honor.

THE COURT: Are you pleading guilty of your own free will because you are guilty?

THE DEFENDANT: I am guilty of having the material on my computer, Your Honor. And, yes, that's why I'm pleading guilty.

THE COURT: Do you understand that the offense to which you're pleading guilty is a felony offense and that if your plea is accepted, you will be adjudged guilty of that offense and that such adjudication may deprive you of valuable civil rights such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess any kind of firearm?

THE DEFENDANT: Yes, Your Honor.

THE COURT: . . . The maximum penalty the Court could impose upon conviction of this offense is up to 20 years imprisonment, a five-year minimum mandatory sentence, a fine not to exceed $250,000, a term of supervised release for life which would follow any term of imprisonment, and if you violated the conditions of supervised release you could be imprisoned for that entire term, a mandatory special assessment of $100, and any restitution the Court determines is appropriate. Do you understand those possible consequences of your guilty plea?

THE DEFENDANT: Yes, Your Honor.

THE COURT: . . . Under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to consider in determining the sentence in a criminal case. Have you and Mr. Briskman talked about how the sentencing guidelines might affect your

sentence?

THE DEFENDANT:        I don't know, Your Honor.

THE COURT:        Did you have a probation conference with a probation officer?

MR. BRISKMAN:  We did.

THE DEFENDANT:        Oh, yes.

MR. BRISKMAN: And we discussed the possibility and the ramifications relative to minimum mandatory at the probation conference.

THE COURT:        Well, in a case of this nature, sometimes the minimum mandatory trumps the guidelines or become the guidelines. But you have discussed the guidelines with Mr. Briskman; is that correct?

THE DEFENDANT:        Yes, Your Honor.

THE COURT:        . . . Do you understand that the Court will not be able to determine the advisory guidelines sentencing range for your case until after a presentence report has been completed and you and the government have had the opportunity to challenge the reported facts and the application of the guidelines recommended by the probation officer and that the guideline range determined by the Court may be different from any estimate Mr. Briskman or anybody else might have given you in this case?

THE DEFENDANT:        Yes, Your Honor.

THE COURT:        And do you further understand that after your guideline range has been determined, the guidelines themselves further provide for departures either upwards or downwards from that range in certain circumstances?

THE DEFENDANT:        Yes, Your Honor.

THE COURT:        Do you further understand that although the Court is required to consider the guidelines when determining a sentence, the guidelines are advisory and do not necessarily control the sentence imposed?

THE DEFENDANT:          Yes, Your Honor.

THE COURT:     Do you understand that in the federal system parole has been abolished and if you are sentenced to prison you will not be released on parole?

THE DEFENDANT:          Yes, Your Honor.

THE COURT:     Do you understand that under some circumstances you or the government may have the right to appeal any sentence that I impose; however, your plea agreement contains a limited waiver of the right to appeal the sentence and in your case you have reserved the right to contest on appeal or in a post-conviction proceeding only if punishment is imposed in excess of the statutory maximum, if punishment is imposed that constitutes an upward departure from the guideline range, or if you have a claim of ineffective assistance of counsel? Do you understand that you have waived your right to appeal or to file a post-conviction proceeding in all but those three circumstances outlined in your plea agreement?

THE DEFENDANT:          Yes, Your Honor.

.          .          .

THE COURT:     [] Do you understand that you have a right to plead not guilty to any offense charged against you and to persist in that plea and that you would then have the right to a trial by jury, and at that trial you would be presumed to be innocent and the government would have to prove your guilt beyond a reasonable doubt, that you would have the right to the assistance of counsel for your defense, the right to see and hear all of the witnesses and have them cross-examined in your defense,  the right on your own part to decline to testify unless you voluntarily elected to do so in your own defense, and the right to the issuance of subpoenas to compel the attendance of witnesses to testify in your defense?

THE DEFENDANT:          Yes, Your Honor.

THE COURT:     And do you understand that if you went to trial and decided not to testify or to put on any evidence at all, those facts could not be used against you?

THE DEFENDANT:          Yes, Your Honor.

THE COURT:        Do you further understand that by entering a plea of guilty, if that plea is accepted by the Court, there will be no trial and you will have waived or given up your right to a trial as well as those other rights associated with a trial that I've just described?

THE DEFENDANT:        Yes, Your Honor.

THE COURT:        . . . You're pleading guilty to a charge of violating Title 18, United States Code, Section 2252A(a)(2) and (b)(1). And in order to convict you of that offense the United States would have to prove that you knowingly received or distributed any material that contains an image of child pornography, including on a computer, and that such image was transported in interstate or foreign commerce by any means, including by a computer, or was produced using materials that were mailed, shipped, or transported in interstate or foreign commerce by any means, including by a computer. Do you understand what the government would have to prove in order to convict you?

THE DEFENDANT:        Yes, Your Honor.

THE COURT:        . . . Now, I asked you a few minutes ago if you had signed the factual resume attached to the plea agreement and you said that you has. And I want to make sure that you understand that by signing the factual resume you are agreeing that the government could prove the facts set forth in that document in order to support your guilty plea. Do you understand and agree to that?

THE DEFENDANT:        Yes, Your Honor.

THE COURT:        All right. I have read that. So I'll now ask you how do you plead to the charge, guilty or not guilty?

THE DEFENDANT:        Guilty, Your Honor.

THE COURT:        It is the finding of the Court in the case of Charles Michael Breland that the defendant is fully competent and capable of entering an informed plea, that he is aware of the nature of the charges and the consequences of the plea and that the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense. The plea is therefore accepted and the defendant is now adjudged guilty of that offense.

(*Id.* at 2-8 & 8-11)

5.     The government filed a motion for preliminary forfeiture on May 1, 2009, seeking forfeiture of certain computer equipment. (Doc. 32) The Court entered a preliminary order of forfeiture on May 4, 2009. (Doc. 33) Four days later, on May 8, 2009, the government filed a motion to dismiss the order of forfeiture. (Doc. 34 ("[T]he computer equipment named in the preliminary Order of Forfeiture was administratively forfeited by the United States Bureau of Customs and Border Protection, Office of Fines, Penalties and Forfeitures.")) The Court granted the government's motion to dismiss by endorsement on May 8, 2009. (Doc. 35)

6.     The Presentence Investigation Report was prepared by the Probation Office on July 1, 2009 and provided to the parties. (Doc. 39, at 1) Neither the defendant nor the government interposed objections to the Presentence Report. (Docs. 37 & 38) In an addendum to the report prepared on July 27, 2009, and based upon a total offense level of 25 and all other factors contained in the report, including a criminal history category of I, the probation officer recommended that Breland receive a 60-month term of imprisonment,[5] a life term of supervised release following his release from prison, and a special assessment of $100.00. (*Id.*, SENTENCING RECOMMENDATION, at 1-4)

7.     During the sentencing hearing on August 5, 2009, the parties agreed that the appropriate total offense level was 25 and that Breland had a criminal history category of I.

---

[5]     The guidelines produced a range of 60 to 71 months imprisonment. (*See* Doc. 39, SENTENCING RECOMMENDATION, at 1)

(Doc. 46, Sentencing Transcript, at 2) Thereafter, the following occurred:

THE COURT:        All right. I will hear from you on behalf of your client.

MR. BRISKMAN:   Judge, his wife is here and would like to address the Court, as well as Dr. Rosenbaum, who has treated him professionally subsequent to these charges arising.

THE COURT:        All right. Let me ask you before they come up, are they aware that there is a mandatory minimum sentence in this case?

MR. BRISKMAN:   Yes.

THE COURT:        Okay. Go ahead.

MR. BRISKMAN:   And I don't want to be presumptuous but I think that, given the mandatory minimum and the fact that the government and the defendant pretty much converge at the same point, if that's where the Court's going --

THE COURT:        Well, I can tell you that is where the Court plans to go, unless the government has some other --

MR. COSTELLO:   No, Your Honor.

THE COURT:        All right. But go ahead, Mr. Briskman. Whoever you want to call up.

MR. BRISKMAN:   Excuse me.

(A discussion was held off the record between the defendant and his attorney.)

MR. BRISKMAN:   Given that situation, then, rather than invest the Court's time in hearing testimony, we have nothing to add other than I would – Your Honor has the presentence report. You know he has been in the service for 22 years, honorable discharge, high security clearance, has no prior criminal record to speak of. He's been a good husband and father in excess of 40 years. His wife, children, friends are here supporting him. Dr. Rosenbaum has treated him, up until his incarceration, for depression. There is a long

18

history in his childhood of extreme abuse. And given the circumstances, I wanted to make Your Honor fully aware of his situation. He stands before you apologetic for even having to be here and apologizes not only to the Court but to his family and friends and is deeply appreciative of the support they have given him. They have never abandoned him. And that's all we have.

THE COURT:          I will state for the record that I have read all of the records that have been presented as well as the information in the presentence report.

Mr. Breland, do you have anything that you would like to say before I impose sentence?

THE DEFENDANT:          Your Honor, I would like to take the opportunity to apologize, mostly to my wife for not being there. I hate that this happened. It was not my intention to get so out of whack and worried about kids being abused. It just happened.

THE COURT:          All right.

MR. BRISKMAN:  Thank you.

THE COURT:          Does the government have any recommendation?

MR. COSTELLO:  We do, Your Honor. In accordance with the written plea agreement, we would recommend a sentence at the low end of the guideline range, which is the statutory minimum in this case. We believe under the facts and circumstances – I know the Court's reviewed the presentence report[,] [a]ll the other information, [and] is familiar with these types of cases. And we believe that a low-end sentence is appropriate under the circumstances.

THE COURT:          Well, I have considered the guidelines, which are in this case driven by the mandatory minimum sentence, and I've considered the statutory purposes of sentencing.  And while I may disagree to some point[,] to some extent[,] with where the guidelines end up in this case, there's nothing to be done about it because I am bound by the law to follow the mandatory minimum sentence. And so I do find it to be appropriate under the law.

I'm now going to state the sentence that I intend to impose, and after

I've stated it I will allow counsel to make legal objections before imposition of sentence.

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant, Charles Michael Breland, is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 60 months as to count two. The Court recommends that he be imprisoned at an institution where he may be evaluated and receive in-depth psychological counseling or, if the defendant volunteers, at a federal correctional institution where he may participate in the sex offender treatment program.

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of life on count two.

Within 72 hours of release from custody of the Bureau of Prisons, the defendant shall report in person to the probation office in the district to which he is released. While on supervised release, the defendant shall not commit any federal, state, or local crimes, he shall be prohibited from possessing a firearm or other dangerous weapon, and shall not possess a controlled substance. In addition, the defendant shall comply with the standard conditions of supervised release as recommended by the United States Sentencing Commission and on record with this Court.

The Court orders that the defendant comply with the following special conditions of supervised release: First, the defendant shall participate in mental health and/or sex offender treatment, evaluation, testing, clinical polygraphs and other assessment instruments as directed by the probation office.

Second, the defendant shall not possess or use a computer with access to any online computer service at any location, including employment, without the permission of the probation office.

Third, the defendant shall consent to periodic unannounced examinations of his computer equipment, which may include retrieval and copying of all data from his computer and any internal or external peripherals to ensure compliance with this condition, and/or removal of such equipment for the purpose of conducting a more thorough inspection.

And, fourth, the defendant shall register with the state sex offender registration agency in any state where he resides, is employed, carries on a

vocation, or is a student, as directed by the probation office.

The Court finds that the defendant does not have the ability to pay a fine and therefore a fine is not imposed.

As I indicated earlier, I find the guideline range is appropriate to the facts and circumstances of this case and is reasonable, given the statutory purposes of sentencing.

The sentence imposed addresses the seriousness of the offense and the sentencing objectives of punishment, deterrence, and incapacitation.

It is ordered that the defendant pay a special assessment in the amount of $100 on count two, which shall be due immediately.

Now, having stated the sentence I intend to impose, are there legal objections to it?

MR. BRISKMAN:   No, Your Honor.

MR. COSTELLO:    No objection. We would just ask that the sentence also include the forfeiture as well.

.        .        .

THE COURT:        I hereby impose the sentence as previously stated.

Mr. Breland, you can appeal your conviction if you believe that your guilty plea was unlawful or involuntary of if there's some other fundamental defect in the proceeding that was not waived by your guilty plea.

You also have a statutory  right to appeal the sentence under certain circumstances. However, you entered into a plea agreement which waives certain of your rights to appeal the sentence itself. Such waivers are generally enforceable. But if you believe the waiver to be unenforceable, you can test that theory in the appellate [c]ourt. If you do decide to appeal, you must do so within 10 days of entry of judgment in this case and Mr. Briskman could file that notice for you.

THE DEFENDANT:        Sorry, Your Honor. I couldn't understand what you were saying.

THE COURT:     I said if you do decide to appeal, you must do so within 10 days of entry of judgment in this case and Mr. Briskman could file that notice for you.

THE DEFENDANT:       Yes, ma'am.

THE COURT:     Now, I believe there are counts to be dismissed?

MR. COSTELLO:   Yes, Your Honor. Count one we would move to dismiss at this point.

THE COURT:     All right. Count one is hereby dismissed. Is there anything further from the parties?

MR. COSTELLO:   No, ma'am.

MR. BRISKMAN:   Your Honor, I'm sure Mr. Breland will get credit for the time he's been in custody since his plea?

THE COURT:     Yes, he will get credit for that.

(*Id.* at 2-7 & 8-9; *see also* Doc. 40 (judgment in a criminal case entered on August 6, 2009))

8.     On December 2, 2009, Breland filed the present collateral attack on his conviction and sentence pursuant to 28 U.S.C. § 2255. (Doc. 42) Therein, as well as in his reply to the government's response (Doc. 52), petitioner makes clear that he raises the following claims which he contends entitle him to relief: (1) his Fifth Amendment due process rights were violated given the court's failure to conduct a competency hearing or order an evaluation to determine his mental state at the time he entered his plea of guilty; and (2) ineffective assistance of trial counsel due to his attorneys' failure to (a) file notice of appeal and challenge his sentence as it related to the term of supervised release; (b) to pursue

application of the "safety valve" provision set forth in 18 U.S.C. § 3553(f);[6] (c) to eschew a plea in light of the lack of criminal intent; (d) to move for a competency evaluation; and (e) to file objections to the pre-sentence report.

9. The United States filed its response in opposition on February 25, 2010 and therein contends that following an evidentiary hearing on petitioner's first claim of ineffective assistance of counsel, this Court should determine that petitioner's claims have no merit. (*See* Doc. 48)

10. The undersigned conducted an evidentiary hearing on June 17, 2010, regarding petitioner's claim that his trial attorneys were ineffective in failing to pursue a direct appeal attacking the supervised release aspect of his sentence. According to Breland, upon hearing Judge Granade pronounced that she intended, as part of her sentence, to subject him to supervised release for life, he turned to Joshua Briskman, Esquire, and told him to "contest it;"[7] he specifically recalls that he did not tell either Briskman to file an appeal nor did he

---

[6]    During the evidentiary hearing, this ground of ineffective assistance of counsel was withdrawn on the basis that it has no merit. *Compare United States v. Houston*, 177 Fed.Appx. 57, 58 (11th Cir. 2006) (court determined that defendant pled guilty to charges of using a computer to attempt to persuade, induce, and entice a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b), and, therefore, was not convicted of any of the five enumerated provisions of Title 21 of the United States Code to which the "safety valve" provision applies) *with* Doc. 40 (Breland pled guilty to a charge of receipt and distribution of child pornography in violation of 18 U.S.C. § 2252A(a) & (b)(1)); *cf. United States v. Lerma*, 255 Fed.Appx. 440, 442 (11th Cir. 2007) ("Under the safety-valve provision, if a defendant **convicted of certain drug crimes** satisfies certain criteria, a district court shall impose a sentence without regard to any statutory mandatory minimum." (emphasis supplied)).

[7]    Breland acknowledged that he signed the plea agreement. Petitioner also remembered seeing the presentence report because he had a number of objections to the factual content of same. Finally, Breland acknowledges that he participated in his change of plea hearing

write to his attorneys and request that they file an appeal.[8] Breland testified that the word "appeal" did not come to him but insisted that he told Josh Briskman to contest the lifetime supervised release aspect of his sentence.[9] For his part, Joshua Briskman testified that Breland did not ask him to file an appeal nor does he recall hearing petitioner say that he wanted to "contest it [i.e., his sentence]."[10]

11. Breland's evidentiary hearing testimony establishes that the petitioner pled guilty to Count 2 of the indictment because he had the "material," that is, pornographic images of children, on his computer which he, and he alone, downloaded. In fact, petitioner admitted that he willfully downloaded the pornographic images onto his computer. Both

---

and responded to questions posed by the Court. However, though the plea agreement and presentence report contained information that he was subject to a lifetime term of supervised relief and the Court specifically informed him that he was subject to such term of supervised release, petitioner maintains that he never understood, until his sentencing, that he was subject to supervised release for life. According to petitioner, all he remembers is talk about a possible fine.

[8] Both Don and Joshua Briskman testified that Breland had no meritorious issues to raise on appeal. It is clear, however, that the Briskmans consulted with Breland regarding his right to appeal within the context of the provisions of the plea agreement.

[9] Although Breland's attorneys were prepared to have several witnesses testify in his behalf at the sentencing hearing, once they fully appreciated that Judge Granade was going to impose the statutory maximum minimum sentence of 5 years they saw no point in attempting to offer any evidence toward mitigation of the sentence.

It was clear from the attorneys who participated in the evidentiary hearing that parties to criminal cases normally do not negotiate supervised release terms; instead, that is a matter the attorneys leave solely to the discretion of the trial judge. Therefore, neither Briskman made an argument to the Court that the SRT term should be for less than life.

[10] Donald Briskman testified that Breland was upset about the supervised release aspect of his sentence, but he does not recall petitioner asking him to either appeal or contest the sentence. On cross-examination, Mr. Briskman admitted that it was possible that Breland asked him to contest this aspect of the sentence and he just forgot to file an appeal.

Breland and Don Briskman acknowledged speaking at length about petitioner's motivation for downloading the images[11] and further agree that Briskman informed petitioner that, as a legal and practical matter, his motivation was not a viable defense to the charges.[12] Moreover, both Briskmans were well aware of the fact that Breland was being treated for depression; however, Don Briskman testified that at the time of the filing of the plea agreement (i.e., March 19, 2009) and entry of the plea (April 28, 2009), Breland was asymptomatic[13]and that there was no evidence to suggest that petitioner was incompetent either at the time he committed the offenses set forth in the indictment or at the time he

---

[11]    According to Breland, he empathized with the children depicted in the pornographic images he downloaded because he was abused as a child and wanted to try to figure out a way to protect them and stop what was happening to them.

[12]    As noted by Don Briskman, there was clearly a factual basis for the charges inasmuch as the pornographic images were found on Breland's computer and Breland admitted he downloaded the images.

[13]    Dr. Michael S. Rosenbaum's letter of October 14, 2009, which petitioner filed in support of his motion to vacate (*see* Doc. 42, Exhibit B), supports Mr. Briskman's testimony (*see id*. at 1 & 2 ("At the sixth therapy session conducted January 7, 2009, Mr. Breland's rating of depression during the week prior to the visit fell in the asymptomatic range. His level of depression remained in the asymptomatic range for the remainder of the sessions that I worked with him. . . . At the twelfth therapy session conducted on March 16, 2009, I asked Mr. Breland about his reason for having downloaded the problematic material instead of merely viewing the material without downloading it. He responded that he believed that nobody cared about the children depicted in the pictures, with nobody protecting them. Mr. Breland saved the pictures in order not to abandon the children, just like[] he believed everyone else did. He identified with what he presumed was the emotional pain being experienced by the children depicted in the pictures. Mr. Breland believed that each child had been betrayed by their parents and perhaps by other people. He kept the pictures to remind himself that somebody cared about these children, with the somebody being him.")).

entered his plea.[14]

12.     Breland testified that he told one of the investigating agents that he had received an email offer from someone in Houston, Texas offering to sell him child pornography and that he also told his attorneys about these emails but they never told him that he could cooperate with authorities and possibly have his sentence reduced. Joshua Briskman testified, however, that he did specifically discuss this scenario with Breland, as well as the United States Attorney, but that petitioner was unable to give substantial assistance to the government.

## CONCLUSIONS OF LAW

1.     28 U.S.C. § 2255 reads, in relevant part, as follows: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

2.     In this instance, Breland contends, in large measure, that constitutionally ineffective assistance of counsel entitles him to the relief afforded by 28 U.S.C. § 2255.[15] In

---

[14]     Therefore, a mental defense to the charges was dismissed by petitioner's attorneys.

[15]     Once a criminal defendant enters a guilty plea, he waives all non-jurisdictional challenges to the conviction's constitutionality and only an attack on the voluntary and knowing

order to establish a claim of ineffective assistance of counsel, a petitioner is required to show (1) that his attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail." *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001), *cert. denied sub nom. Johnson v. Nagle*, 535 U.S. 926, 122 S.Ct. 1295, 152 L.Ed.2d 208 (2002).[16] The *Strickland v. Washington* standard for evaluating claims of ineffective assistance of counsel was held applicable to guilty pleas in *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

To succeed on such a claim, "the defendant must show that counsel's

---

nature of the plea can be raised. *See McMann v. Richardson*, 397 U.S. 759, 772, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970). Stated differently, "a voluntary and intelligent plea made by an accused person, who has been advised by ***competent counsel***, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508, 104 S.Ct. 2543, 2546-2547, 81 L.Ed.2d 437 (1984) (emphasis supplied). Therefore, when a § 2255 motion is filed collaterally challenging convictions obtained pursuant to guilty pleas, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989). The undersigned rejects any passing suggestion by Breland that his guilty plea was not knowingly and voluntarily entered. The record in this case and the evidentiary hearing testimony of Breland and his retained counsel clearly establish that petitioner's plea was knowingly and voluntarily entered.

[16]    It is proper in considering claims made by a federal prisoner under § 2255 to look for guidance from cases discussing claims raised by state prisoners under 28 U.S.C. § 2254. *See Hagins v. United States,* 267 F.3d 1202, 1205 (11th Cir. 2001) (citing *Holladay v. Haley*, 209 F.3d 1243 (11th Cir. 2000)), *cert. denied*, 537 U.S. 1022, 123 S.Ct. 545, 154 L.Ed.2d 432 (2002).

performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).[17] In addition, the defendant must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59, 106 S.Ct. at 370. In other words, . . . [a petitioner] "must show that there is a reasonable probability that, but for counsel's errors, he would . . . have pleaded [not] guilty and would . . . have insisted on going to trial." *Hill*, 474 U.S. at 59, 106 S.Ct. at 370.

*Coulter v. Herring*, 60 F.3d 1499, 1504 (11th Cir. 1995) (footnote, brackets and ellipses added), *cert. denied sub nom. Coulter v. Jones*, 516 U.S. 1122, 116 S.Ct. 934, 133 L.Ed.2d 860 (1996).[18] Of course, in the context of sentencing following entry of a guilty plea the court simply considers whether petitioner has established, in accordance with *Strickland, supra*, that his attorney was deficient and that he was prejudiced by this deficiency in performance. *See, e.g., Myers v. United States,* 2009 WL 1505638, *1 (W.D. Pa. 2009) ("In order for petitioner to succeed on an ineffective assistance of counsel claim, he must prove: (1) that his counsel was deficient; and (2) that he was prejudiced by his counsel's deficiency."), *aff'd,* 2010 WL 438704 (3rd Cir. 2010).

3.     When applying the *Strickland* standard, it is clear that courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d

---

[17]     "When analyzing ineffective-assistance claims, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Smith v. Singletary*, 170 F.3d 1051, 1053 (11th Cir. 1999) (citations omitted).

[18]     "'[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" *Johnson, supra,* 256 F.3d at 1176 (citation omitted).

1018, 1023 (11th Cir. 1998) (citation omitted), *cert. denied sub nom. Oats v. Moore*, 527

U.S. 1008, 119 S.Ct. 2347, 144 L.Ed.2d 243 (1999); *see also Butcher v. United States*, 368

F.3d 1290, 1293 (11th Cir. 2004) ("[O]nce a court decides that one of the requisite showings

has not been made it need not decide whether the other one has been.").

    4.    Petitioner's primary contention is that his trial attorneys were ineffective in

light of their failure to file an appeal attacking the lifetime supervised release aspect of his

sentence. After consideration of all the evidentiary hearing testimony, the undersigned finds

that Breland did not ask his attorneys to file an appeal to attack this aspect, or any other

aspect, of his sentence. By his own admission, petitioner never specifically instructed his

attorneys to appeal and since Judge Granade specifically informed Breland after imposition

of his sentence that he could appeal same under certain circumstances (Doc. 46, at 8-9), the

undersigned finds petitioner's evidentiary hearing testimony that the word "appeal" did not

come to him wholly incredible and unworthy of belief.[19] His testimony that he turned to

Joshua Briskman and told him to "contest it," a statement which the younger Briskman does

not recall hearing, does not lend itself to only one inexorable conclusion, that is, that he

desired to appeal his lifetime term of supervised release. Instead, assuming he told the

younger Briskman to "contest it," the undersigned construes this statement, at best, as

petitioner's desire that Joshua Briskman ask Judge Granade to reconsider this aspect of the

sentence. Joshua Briskman's failure to make any argument in this regard and, more

---

    [19]    This determination is further bolstered by petitioner's evidentiary hearing
testimony that he did not write to the Briskmans and instruct them to appeal his sentence.

importantly, his specific statement that he had no legal objections to the sentence Judge

Granade intended to impose (Doc. 46, at 7), does not rise to constitutionally ineffective

assistance of counsel both because the sentence to lifetime supervised release was within the

range and the preferred range for individuals convicted of sex offenses, *compare* 18 U.S.C.

§ 3583(k) ("Notwithstanding subsection (b), the authorized term of supervised release for any

offense under section 1201 involving a minor victim, and for any offense under section 1591,

2241, 2242, 2243, 2244, 2245, 2250, 2251, 2251A, 2252, 2252A,[20] 2260, 2421, 2422, 2423,

or 2425, is any term of years not less than 5, or **life**." (emphasis supplied; footnote added))

*with* USSG § 5D1.2(b)(2) & p.s. ("Notwithstanding subdivisions (a)(1) through (3), the

length of the term of supervised release shall be not less than the minimum term of years

specified for the offense under subdivisions (a)(1) through (3) and may be up to ***life***, if the

offense is . . . (2) a ***sex offense***. (Policy Statement) If the instant offense of conviction is a

***sex offense***, however, ***the statutory maximum term of supervised release is recommended***."

(emphasis supplied)); *see United States v. Carpenter*, 280 Fed.Appx. 866, 868 (11th Cir.

2008) ("Because he violated §§ 1591 and 2422, Carpenter was statutorily eligible for a life

term of supervised release. The Guidelines recommend a life term of supervised release, and

the policy statement recommends the statutory maximum term, *i.e.,* life, for sex offenses."

(internal citations omitted)), and because petitioner has not come forward with any viable

---

[20]     Count Two, the count to which Breland pled guilty, charged a violation of 18
U.S.C. § 2252A. (*See* Doc. 4) "[Section] 3583(k) separately authorizes a term of supervised
release of 'any term of years or life' for certain offenses, including those contained in § 2252A."
*United States v. Moriarty,* 429 F.3d 1012, 1024 (11th Cir. 2005).

legal objection that the younger Briskman could have interposed to the lifetime term of

supervised release.[21]  It is clear to the undersigned in this case that the college-educated

---

[21]    In this regard, the undersigned notes that the Eleventh Circuit has specifically upheld lifetime terms of supervised release in the case of defendants involved in child pornography against Eighth Amendment attack. *See, e.g. Moriarty, supra*, 429 F.3d at 1024-1025.  Moreover, it is clear that because a term of supervised release is part of an individual's sentence, it is not a successive punishment that violates the Double Jeopardy Clause. *United States v. Duarte-Ayon*, 2008 WL 349006, *3 (D. Ariz.) (citing *United States v. Huerta-Pimental*, 445 F.3d 1220, 1223 (9th Cir. 2006)), *report and recommendation adopted*, 2008 WL 717682 (2008). In addition, in light of the fact that the Court in this case imposed the lifetime term of supervised release only after stating she had considered the guidelines and the statutory purposes of sentencing (Doc. 46, at 5; *see id.* at 7 ("The sentence imposed addresses the seriousness of the offense and the sentencing objectives of punishment, deterrence, and incapacitation.")), the Eleventh Circuit would not have entertained any argument by Breland that his term of supervised release was unreasonable. *See Carpenter, supra,* 280 Fed.Appx. at 868 ("We also reject Carpenter's contention the lifetime term of supervised release was unreasonable because the district court made no factual findings to support a lifetime term of supervised release. The district court imposed Carpenter's term of lifetime supervised release after stating it had considered the Guidelines and other § 3553(a) factors. . . . Carpenter has not met his burden in demonstrating the life term of supervised release, which was statutorily permissible, recommended by the Guidelines policy statement, imposed after consideration of the § 3553(a) factors, and is expressly allowed to be revisited depending on Carpenter's performance while under supervision, is unreasonable."). Finally, that there was no deficient performance in this regard is clear based upon the fact that Breland has the opportunity to petition this Court to terminate his term of supervised release and discharge him from further obligations after one year of supervised release. *Compare* 18 U.S.C. § 3583(e)(1) ("The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) . . . terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice[.]") *with United States v. Mullen*, 329 Fed.Appx. 61, 64 (9th Cir. 2009) ("18 U.S.C. § 3583(e)(1) gives Mullen [who entered a guilty plea to possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B)] the opportunity to petition the district court to terminate his term of supervised release and discharge him from further obligations after one year of supervised release."), *cert. denied*, ___ U.S. ___, 130 S.Ct. 432, 175 L.Ed.2d 296 (2009), *and Carpenter, supra,* 280 Fed.Appx. at 868 ("[A]fter his term of supervised release was imposed, rather than requesting the court's reasoning for imposing a lifetime term of supervised release, Carpenter requested the district court include in his written judgment that supervised release could be revisited depending upon the defendant's performance while under supervision. The district court did exactly what Carpenter requested, and the Judgment reads: 'The defendant

petitioner had ample notice that he was facing a lifetime term of supervised release (*compare* Doc. 28, Plea Agreement, at ¶ 10 ("The maximum penalty the Court could impose as to Count 2 of the Indictment is . . . [a] term of supervised release for life, which would follow any term of imprisonment.") *with* Doc. 45, Plea, at 6 ("The maximum penalty the Court could impose on conviction of this offense is . . . a term of supervised release for life which would follow any term of imprisonment[.]")), such that he simply could not have been so surprised by the pronouncement of this aspect of his sentence that he was unable to specifically instruct his attorneys to appeal his sentence. That Breland did not instruct his attorneys to appeal his lifetime term of supervised release is patently apparent to the undersigned. Accordingly, the Briskmans' representation of Breland in this regard was not deficient. *See, e.g., Smith v. United States*, 522 F.Supp.2d 233, 238 (D. D.C. 2007) ("[T]he Court finds that petitioner did not ask his counsel to file an appeal, and therefore, counsel's representation of defendant was not ineffective."); *cf. Gomez-Diaz v. United States*, 433 F.3d 788, 791-792 (11th Cir. 2005) ("The [Supreme] Court [in *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000)] first reaffirmed the well-settled rule that an attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner per se. The Court went on to hold that, even if a client has not made a specific request of his attorney to file an appeal, a court must inquire whether the attorney consulted with the client regarding the advantages and disadvantages of

_____

may petition the Court for early termination of supervised release.'").

appealing and made a reasonable effort to determine the client's wishes. ***If so, the attorney has only acted unreasonably if he has ignored the client's wishes to appeal the case***." (internal citations omitted; emphasis supplied)).

5. Petitioner's other claims of constitutionally ineffective assistance of counsel also have no merit. In particular, petitioner's contention that his attorneys should have eschewed the plea agreement in light of the lack of criminal intent is conclusory and specious. In this case, Breland admitted in his plea agreement, specifically in the factual resume, and during his plea colloquy that he knowingly downloaded and looked at several hundred images of children in sexually explicit situations from internet news groups.[22] Therefore, his scienter argument has no merit, *see United States v. Acheson*, 195 F.3d 645, 653 n.4 (11th Cir. 1999) ("Acheson contends the district court unconstitutionally applied 18 U.S.C. § 2252A(a)(2) by failing to require the government to establish the scienter requirement. We find this argument lacks merit as Acheson admitted knowingly downloading and saving hundreds of images of actual children in sexually explicit situations."), and, therefore, he can establish neither prong of the *Strickland* standard in this regard.[23] Moreover, his claims that the court should have conducted a competency hearing to determine his mental state at the time he entered his plea, and that his attorneys were ineffective in failing

---

[22] Furthermore, Breland admitted during his evidentiary hearing that he willfully downloaded the pornographic images onto his computer.

[23] In this regard the undersigned would also note that the elder Briskman's advice to Breland that his motivation for downloading the images would not be a viable defense to the charges he stood accused of in the indictment was "spot on" and certainly does not rise to the level of deficiency envisioned by *Strickland*.

to push for such a hearing, have no merit. Although it is clear that "[t]he Due Process Clause of the Fifth Amendment prohibits the government from trying a defendant who is incompetent[,]" it is also clear that a district court need only conduct a competency hearing "when there is a 'bona fide doubt' regarding the defendant's competence." *United States v. Rahim*, 431 F.3d 753, 759 (11th Cir. 2005) (citations omitted), *cert. denied*, 547 U.S. 1090, 126 S.Ct. 1820, 164 L.Ed.2d 552 (2006). At no stage in the proceedings in this case was there ever presented a "bona fide doubt" regarding Breland's competence;[24] therefore, the Court did not err in failing to conduct a competency hearing nor did petitioner's attorneys err in failing to request such a hearing.[25]

6.      The government contends that petitioner's other claims of alleged ineffective assistance of counsel, namely the "safety valve" argument and "objections" to the pre-sentence report, are improper attempts to circumvent his sentence appeal waiver by recasting

---

[24]      As indicated above, Donald Briskman testified during the evidentiary hearing that Breland was asymptomatic at the time he entered his guilty plea and thereafter. Because there was nothing in the treatment evidence to indicate that Breland was incompetent either at the time of the offense or at the time petitioner was scheduled to stand trial, the strategic decision to eschew a mental defense at trial, in favor of entering a guilty plea, cannot be assailed.

[25]      During the evidentiary hearing petitioner attempted to establish that his attorneys provided ineffective assistance in failing to explore the possibility of obtaining a downward departure motion from the government for providing substantial assistance regarding an alleged individual from Houston, Texas who, by email, offered to sell Breland child pornography. However, it is clear from the evidentiary hearing testimony of Joshua Briskman that he discussed with petitioner the possibility of having his sentence reduced if he cooperated with federal authorities and that, in fact, they engaged the United States Attorney in discussion on this issue but Breland was unable to provide substantial assistance to the government. Accordingly, neither prong of the *Strickland* standard is met with respect to this claim of alleged ineffective assistance of counsel.

sentencing claims as allegations of ineffective assistance of counsel. The undersigned agrees.

7.    It is clearly established in this circuit that "[a]n appeal waiver is valid if a defendant enters into it knowingly and voluntarily." *United States v. Bascomb*, 451 F.3d 1292, 1294 (11th Cir. 2006) (citation omitted); *see also United States v. Bushert*, 997 F.2d 1343, 1350 (11th Cir. 1993) ("We hold, therefore, that in most circumstances a defendant's knowing and voluntary waiver of the right to appeal his sentence will be enforced by this circuit."), *cert. denied,* 513 U.S. 1051, 115 S.Ct. 652, 130 L.Ed.2d 556 (1994).  In this case, Breland pleaded guilty during a change of plea proceeding after being informed of the limited appeal waiver and acknowledging his understanding of that limited waiver. Specifically, Breland informed the Court that he understood, as set forth in the plea agreement bearing his signature, that he had waived all rights to appeal his sentence except that he could appeal if the punishment imposed was in excess of the statutory maximum, if the punishment imposed constituted an upward departure from the guideline range, or if he had a claim of ineffective assistance of counsel. (Doc. 45, Guilty Plea Hearing, at 8; *compare id. with* Doc. 28, PLEA AGREEMENT, at ¶¶ 21-23) Based upon the foregoing, as well as the evidentiary hearing testimony of Donald and S. Joshua Briskman that Breland's case presented no meritorious issues to appeal, the undersigned holds that Breland's knowing and voluntary limited waiver of his right to appeal his sentence in this case should be enforced. Because it is clear that Breland's punishment was not in excess of the statutory maximum nor

was his sentence an upward departure from the guideline range, his frivolous[26] sentencing arguments cannot be challenged in this collateral petition. *Cf. Bushert, supra,* 997 F.2d at 1350 n.17 (indicating that even broad waivers, which include a waiver of collateral appeal of the sentence, can be judicially enforced so long as they are knowing and voluntary). Accordingly, petitioner is precluded from contesting his counsel's effectiveness related to his sentencing. *Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir.) ("While we have not addressed whether a sentence-appeal waiver includes the waiver of the right to challenge the sentence collaterally in the context of a § 2255 petition asserting ineffective assistance of counsel, every Circuit to have addressed the issue has held that a valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing. We are persuaded by the foregoing consistent line of authority from our sister Circuits on this issue, particularly since a contrary result would permit a defendant to circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless." (internal citations omitted)), *cert denied*, 546 U.S. 902,

---

[26]    As previously indicated, petitioner has withdrawn his "safety valve" argument. Moreover, Breland has failed to establish how his "objections" to information contained in the presentence report would have impacted his sentence given that he was sentenced to the statutory minimum mandatory term of five-years imprisonment. Breland's objections all go to "facts" (or, as he stated during the evidentiary hearing, "lies") set forth in the report; however, he was unable to demonstrate how the outcome of his proceeding would have been different had these "facts" been corrected. Accordingly, in addition to this claim of ineffective assistance of counsel being precluded, it has no merit.

126 S.Ct. 246, 163 L.Ed.2d 226 (2005). In other words, Breland cannot now attack in this § 2255 the trial court's failure to have a "clean" presentence report before it based upon the claim that his attorneys were ineffective in failing to properly object to erroneous facts contained in the report. This particular claim of ineffective assistance of counsel is precluded by Breland's valid sentence-appeal waiver.

8.      In consideration of the foregoing, the Magistrate Judge recommends that the Court deny Breland's motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255.

9.      Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). Where, as here, a habeas petition is being denied, in part, on procedural grounds without reaching the merits of an underlying constitutional claim, "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling[,]" *Slack v.*

*McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000), and, in even larger measure, on the merits of underlying constitutional claims, a COA should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[,]" *id.*; *see also id.* at 483-484, 120 S.Ct. at 1603-1604 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were '"adequate to deserve encouragement to proceed further."'"); *see Miller-El v. Cockrell,* 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). The sentence-appeal waiver in this case is valid and, therefore, a reasonable jurist could not conclude that this Court is in error for failing to reach the merits of petitioner's sentencing issues, *see Bushert, supra,* or that it is in error in failing to reach Breland's ineffective-assistance-of-counsel claims as they relate to those sentencing issues, *see Williams, supra,* nor could a reasonable jurist conclude that petitioner should be allowed to proceed further with respect to these claims. *Slack, supra*, 529 U.S. at 484, 120 S.Ct. at 1604 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the

petition or that the petitioner should be allowed to proceed further."). Moreover, with respect to all other claims raised by petitioner the undersigned recommends that the Court find that reasonable jurists could not debate whether Breland's § 2255 motion to vacate should be resolved in a different manner or that any of the remaining issues presented are adequate to deserve encouragement to proceed further. Accordingly, petitioner is not entitled to a certificate of appealability.

## CONCLUSION

The Magistrate Judge is of the opinion that petitioner's rights were not violated in this cause and that his request to vacate, set aside or correct his sentence should be **DENIED**. Petitioner is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis*.

The instructions which follow the undersigned's signature contain important

information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 29th day of June, 2010.

 s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

## MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
## RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
## <u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[27] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[27]      Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).